MARY KRAMER *vs.* SAMUEL CARTER & another.

Suffolk.   March 30, 1883. — Feb. 29, 1884.   FIELD & DEVENS, JJ., absent.
HOLMES, J., did not sit.

A bill in equity, under the Pub. Sts. c. 136, §§ 26, 29, may be maintained against
a devisee primarily liable, and one who is only liable in case the debt cannot
be collected from the other devisee, although the bill does not allege that the
debt, or a part of it, cannot be collected from the devisee primarily liable.

Land was conveyed to C. subject to certain "conditions," so called, one of which
was that no building should be erected on a certain part of the land. C. after-
wards conveyed the land to K. by a deed containing full covenants of warranty
and against incumbrances. K. conveyed the land by a similar deed to A., and
A. by a similar deed conveyed it to D. C. then died, and, after claims against
his estate were barred by the statute of limitations, D. agreed to convey the
land to E. by a warranty deed. On a bill in equity by E. against D. for specific
performance, D. was ordered to convey the land and to abate a certain part
of the price on account of the incumbrances created by the deed to C. Subse-
quently D. brought an action against A., and A. brought an action against K.,
for breach of the covenant against incumbrances, and damages were recovered.
K. then brought a bill in equity against the devisees of C., under the Pub. Sts.
c. 136, §§ 26, 29, within a year after payment of A.'s judgment. *Held*, that the
breach of the covenant against incumbrances contained in the deed from C.
to K. occurred when the deed was given, and that the bill could not be main-
tained for that breach. *Held, also*, that the breach of the covenant of warranty
occurred when K. paid the judgment recovered by A., and that, on this ground,
the bill could be maintained.

W. ALLEN, J.   This is a bill in equity under the Pub. Sts.
c. 136, §§ 26, 29, filed September 22, 1882, and comes before
us upon a demurrer to the bill.   The bill alleges that the de-
fendants, Samuel Carter and Sarah M. Bruce, are the only
devisees and legatees under the will of Mary Ann Carter; that
the devises and legacies to the defendant Bruce are specific, and
that the defendant Carter is the residuary devisee and legatee.
It is not directly alleged, but may be inferred from the bill,
that the defendant Carter received, as residuary legatee, more
than sufficient to pay the plaintiff's claim, and it is not alleged
that it cannot be recovered from him.   One ground of demurrer
is, that, by the construction of the will, the defendant Carter, as
residuary legatee, was made exclusively liable for the debts of
the testatrix in exoneration of the defendant Bruce, and that,
by force of the statute, she is liable for so much only of the
debts as cannot be collected from the other legatee; and that

the allegation that the debt, or a part of it, cannot be collected from him is necessary to show that more than one person is liable for the debt, so as to give jurisdiction in equity, under § 29 of the statute. We think that this objection cannot be maintained. By person " liable for the debt," in § 29, was meant any person who, by reason of having received an estate as heir, next of kin, devisee, or legatee, was within the liability imposed by the preceding sections, and the remedy in equity was intended, not only to ascertain and fix the amount of the debt to be paid, but to distribute and apportion the assets among all who might be liable. The actual liability of legatees secondarily liable depends, not only upon the provisions of the will, but upon the ability of the creditors to recover from those primarily liable ; but that ability or disability cannot be fixed before the commencement of a suit, as an element affecting the cause of action, but is a matter to be determined in the course of a suit as affecting the form of the judgment.

The cause of action upon which the plaintiff relies is upon covenants in a deed of land from Mary Ann Carter to the plaintiff in the year 1864. The bill alleges that, in 1868, the plaintiff conveyed the land by warranty deed to Isaac Ayling; that, in 1874, Isaac Ayling conveyed the same land by warranty deed to Charles H. Ayling; that, in 1878, Charles H. Ayling made a contract to convey the land by warranty deed, and free from all incumbrances, to one Keening; that, before making the conveyance, he ascertained that there was an incumbrance upon the land, or a defect in the title to it, and declined to give a deed with full covenants of warranty and freedom from incumbrance ; that Keening brought a bill in equity against said Charles H. Ayling for specific performance of the agreement to convey, with a prayer for damages on account of the incumbrance or defect in title, and that a decree was entered for a conveyance, subject to the incumbrance or defect in title, and for damages on account of it; that thereupon Charles H. Ayling, having performed the decree, brought an action against Isaac Ayling on his covenant against incumbrances, and recovered judgment for the amount which he had paid for damages under the decree against him ; and that Isaac Ayling, having paid the judgment against him, brought an action against the plaintiff on the covenant

against incumbrances in her deed to him, and recovered judgment for the amount which he had so paid, which the plaintiff has satisfied; and the plaintiff seeks in this proceeding to recover the amount of that judgment, either on the covenant against incumbrances, or on the covenant of warranty in the deed to her from Mary Ann Carter. The bill shows a breach of one or both of these covenants. The only question is whether the debt arising from such breach arose within one year before the commencement of this suit, so as to bring it within the provisions of the statute.

The executor of Mrs. Carter's will was appointed and qualified in the year 1874, and his final account was allowed in February, 1875. The payments by Charles H. Ayling and by Isaac Ayling were more than one year before the commencement of this suit; the payment by the plaintiff was within the year. The question presented may then be more specifically stated thus: Did a cause of action upon any covenant in the deed of Mrs. Carter accrue to the plaintiff when she paid Ayling's judgment against her?

The deed to the plaintiff, and the deeds to the Aylings, were what are called in this Commonwealth warranty deeds, and contained the covenants usual in such deeds, of seisin, of freedom from incumbrances, of right to convey, and of warranty. The covenant known as that of warranty is in these words: " and that I will, and my heirs, executors, and administrators shall, warrant and defend the same " (the afore-granted premises) " to the said grantee, her heirs and assigns forever, against the lawful claims and demands of all persons."

The title which Mrs. Carter had when she conveyed to th. plaintiff was derived from the city of Boston by deed, and in that deed were certain conditions which operated as restrictions, and created a perpetual servitude upon the land in favor of adjoining lands, one of which was that no building should ever be erected upon a certain part of the land. When she conveyed to the plaintiff, the land was subject to an easement which was appurtenant to other land. *Ayling* v. *Kramer*, 133 Mass. 12. This constituted an incumbrance, and exposed her, and after her decease her executor, to an action on the covenant against incumbrances. That covenant was broken, and an action on it

accrued at the time the deed was given, and there is nothing in the St. of 1855, *c.* 177, § 3, (Pub. Sts. *c.* 126, § 18,) which, upon the facts alleged, can give any new right of action to the plaintiff. The right of action upon that covenant did not accrue within the year.

But the easement was not only an incumbrance which worked a present breach of the covenant against incumbrances; it was also a paramount right, which might work a breach of the covenant of warranty. It was an incorporeal hereditament, a part of and taken out of the warranted premises, and annexed and appurtenant to adjoining lands, and forming a part of the estate in them. The covenant of warranty extends to such a right, and the right may be so exercised as to work a breach of the covenant. It is true that it has been called an equitable easement, established by an equitable construction of a deed; but an equitable " claim or demand " is a " lawful " one within the meaning of the covenant. If a paramount right exists which prevents the enjoyment of a part of the premises, it is immaterial whether it was created by a condition construed as a reservation, or by a reservation, or by a covenant or a grant in a deed, and whether it may be established and enforced by a decree in equity or by a judgment at law. If the plaintiff had erected a building upon the land which is subject to the restriction, and the owners of the adjoining tenements had lawfully demolished it, it would have been an eviction, and equally so whether done by an act *in pais*, or by action at law, or by a suit in equity. The real question in the case is, whether the allegations of the bill show such an exercise of the paramount right as to constitute a breach of the covenant of warranty.

It is frequently said that the covenant of warranty is broken only by an eviction; but this is so often explained by the words " constructive eviction," or " what is equivalent to an eviction," or some such qualifying term, that its meaning is left uncertain. Perhaps a more correct statement drawn from the modern use of the word would be, that an eviction is what will constitute a breach of the covenant of warranty. The words " warranty," and " eviction," and " voucher," are borrowed from the feudal law, and are often misleading when adopted into our modern systems of conveyancing and of actions.

Our covenant of warranty is a personal covenant, and is sub-stantially a covenant for quiet enjoyment, although, as Mr. Justice Royce says in *Williams* v. *Wetherbee*, 1 Aik. 233, "We regard a covenant of this description as something more than one for quiet enjoyment. It is a covenant to defend, not the possession merely, but the land and the estate in it." It is connected with the land, and passes to the assignee of it, so that it becomes a covenant with the assignee of the land for the time being, that he shall not be disturbed in his enjoyment of the premises by any paramount right; and if he is lawfully evicted, or prevented from enjoying the premises or any part of them, the covenant is broken, and he has an action against the covenantor.

But the right of a covenantee is not extinguished when he assigns the land with a covenant of warranty; it subsists as a right to indemnity for damage which he may sustain from a breach of the covenant by any prior covenantor. An eviction is a breach of the covenant by each of successive covenantors, whose covenants have all passed with the land, and each is bound to each subsequent covenantee to make satisfaction for the breach. The liability to the covenantee who is evicted is immediate; that to an intermediate covenantor arises when he makes the satisfaction which the prior covenantor was bound but failed to make. Mr. Justice Swift said in *Booth* v. *Starr*, 1 Conn. 244, 249: "In all these cases it is the duty of the first covenantor to make good the damages for a breach of the covenant, and to indemnify all the subsequent covenantees. Each subsequent covenantor is liable to all the subsequent covenantees, and on paying the damages will have a claim for indemnity against a prior covenantor. The nature then of the engagement of the first covenantor is to indemnify all the subsequent covenantees from all damages arising from his breach of the covenant." It is a contract of indemnity, and liability without damage will not sustain an action.

In the case at bar, the plaintiff is an intermediate covenantor, and had no right of action upon the covenant to her until she paid Ayling's judgment; and a cause of action then arose to her, if that payment was in consequence of a breach of the covenant of warranty by her covenantor. The fact that she was liable

upon the covenant against incumbrances, and that the payment was made in an action upon that covenant, is immaterial, if it was made upon a liability upon the covenant of warranty. Any paramount title is an incumbrance, and the mere existence of it is a breach of that covenant for which an action will immediately lie; but only nominal damages can in general be recovered until an eviction or some special damage is shown. When an incumbrance has ripened into an eviction and worked a breach of the covenant of warranty, the liability upon the two covenants, between the original parties, is substantially identical; the damages recovered under either covenant are for the eviction. *Harrington* v. *Murphy*, 109 Mass. 299, and cases cited. If Charles H. Ayling was evicted, the plaintiff was liable upon her covenant of warranty, and the payment made by her was in consequence of the failure of her covenantor to defend the premises, and was upon a liability arising to her from a breach of the covenant by her covenantor. If she had made such payment without suit, she would have had a cause of action upon the covenant of warranty. She cannot have lost the right by making the payment after a judgment against her on her covenant against incumbrances for the same damages.

The question then is whether there was a liability to Charles H. Ayling upon the covenant of warranty. If there was, the payment made by the plaintiff will be taken to have been made in consequence of the breach of that covenant, and a cause of action upon it arose to her when she made the payment. See *Wyman* v. *Ballard*, 12 Mass. 303.

It may be said, in general, that any adverse assertion of a paramount right by which the covenantee is deprived of the enjoyment of the granted premises, or any part of them, or to which he yields, as by giving an equivalent for the paramount estate, will be such an eviction as will constitute a breach of the covenant of warranty. The voluntary payment of a mortgage upon demand shows a breach of that covenant. *Sprague* v. *Baker*, 17 Mass. 586. So the purchase, by an assignee of the grantee, of an equity of redemption sold on execution against the grantor. *Whitney* v. *Dinsmore*, 6 Cush. 124. So the recording of a certificate of entry by a mortgagee for condition broken. *Furnas* v. *Durgin*, 119 Mass. 500. In these cases, and in others which

might be cited, there was no ouster; there was nothing more than the assertion of a paramount right adversely to the title claimed by the tenant, with a yielding to that right by the payment of money to procure its extinguishment, or the mere assertion of the right by an act in derogation of the title claimed.

In the case at bar, the breach was not in the failure to defend against a paramount title to the whole estate in the land, or in parcel of it, but to an incorporeal hereditament constituting a part of it; and the evidence of a failure to warrant and defend that must correspond with the manner in which it can be possessed and enjoyed. The right to erect buildings upon the land was a part of the premises granted to Charles H. Ayling. The right to have the same land remain without erections upon it was a paramount right in the adjoining owners, appurtenant to their lands. That right was asserted adversely to Charles H. in the suit by Keening. It was the easement belonging to the adjoining owners which was asserted and established in that suit, as truly as if it had been a suit by them to restrain Charles H. from building upon the land. Had he brought a suit to establish his right and been defeated, it would have been a breach of the covenant. *Adams* v. *Conover*, 87 N. Y. 422. He was prevented by the assertion of the adverse title from assigning the right, and was compelled to assign his estate in the land without it, and this was an absolute and perpetual disturbance of the right. The right could not be enjoyed apart from the rest of the estate in the land, and, when he conveyed the land subject to and excepting the easement, all possibility of enjoying or asserting the right adverse to the easement ceased; the estate covenanted to him in the land, except what he had assigned, was extinguished; and nothing was left in him which he could enjoy or assign, or to which the covenant of warranty could attach, or by the assignment of which the covenant could pass. When the paramount title to a part of the premises was so asserted that he could neither assign nor hold that part, but was wholly deprived of it, the covenant to warrant and defend it was broken.

The allegations of the bill show a breach of the covenant of warranty, and that the plaintiff's cause of action upon that

covenant arose within one year before the suit was com-
menced.                                    *Demurrer overruled.*

   *W. A. Munroe*, for the defendant Carter.

   *C. T. Russell, Jr. & W. E. Russell*, for the defendant Bruce.

   *J. A. Maxwell*, for the plaintiff.