# CASES

## ARGUED AND DETERMINED

### IN THE

# United States Circuit and District Courts.

---

## ADAMS *v.* VALENTINE.

*(Circuit Court, S. D. New York.* November 11. 1887.)

1. SPECIFIC PERFORMANCE—WHEN ENFORCED.

Equity will not decree specific performance of a contract to purchase real estate, when the vendor is unable to offer a marketable title to the purchaser; and a title open to a reasonable doubt is not a marketable one.

2. DEED—CONDITIONS—FORFEITURE.

The clause in a deed, "provided, and this deed is upon condition, that no building shall ever be erected upon such premises nearer to M. street than the house of O. now stands," creates a condition as distinguished from a limitation or covenant, and the whole estate conveyed becomes liable to forfeiture in case of a breach of the condition.

3. SAME.

Although the courts lean against forfeiture, and will construe words as creating a covenant or restriction instead of a condition, which are capable of such construction, they are not to ignore the settled legal significance of the language employed.

4. VENDOR AND VENDEE—DEFECT IN TITLE—DETERMINABLE FEES.

Complainant agreed to sell, and defendant to buy, certain real estate, with a dwelling-house thereon fronting on M. street; "title to be good or sale void; and sale subject to restriction against building beyond the present front line of the house." *Held,* that defendant was entitled to a clear title, free from all incumbrances except a servitude restricting the mode of use of the strip of land between the front line of the house and M street, and that it was a good defense to a suit for specific performance that the complainant's interest in the land was a base fee, liable to be determined as to the entire tract upon encroachment on the strip in question for building purposes; such a defect in the title not being susceptible of pecuniary compensation.

5. SPECIFIC PERFORMANCE—RECOVERY OF MONEY PAID.

Defendant, in a suit for specific performance of a written contract for the purchase of land, may recover the earnest money paid, without filing a cross-bill, where the title offered is bad, and the return of the money is insisted upon in the answer.

In Equity.

*George H. Adams,* for complainant.

*H. W. Chaplin,* for defendant.

v.33F.no.1—1

WALLACE, J.   This suit is brought to enforce the specific performance of a contract between the parties of the date of March 21, 1885, by which the complainant agreed to sell, and the defendant to buy, certain real estate, with a dwelling-house thereon fronting on Mount Vernon street, formerly Olive street, Boston, for the sum of $50,000, to be paid in cash on delivery of the deed; $1,000 of the consideration money having been paid at the time of making the contract.   The contract contained the following clause: "Conveyance to be made by a good and sufficient deed, giving clear title from all incumbrances on or before the fifteenth day of April next ensuing; sale subject to restriction against building beyond the present front line of the house; title to be good or the sale void." The time for executing the conveyance was extended by the mutual understanding of the parties, and had not expired April 23, 1885; and on that day the defendant by letter notified the complainant that he should recede from the purchase, and expect the return of the $1,000, because of a defect in the title to the real estate consisting of "a condition imposed by the deed of Jonathan Mason to Charles Bulfinch, dated October 19, 1805, also imposed by a number of succeeding conveyances." The deed from Mason to Bulfinch describes the premises in question as a lot of land "situate on Mount Vernon, westward of the estate of H. G. Otis, Esq.," and conveys the land by metes and bounds, and contains the following clause: "Provided, and upon condition, that no building shall ever be erected upon said premises nearer to Olive street than said Otis' house now stands."   Bulfinch conveyed the premises to Humphreys by a deed dated February 10, 1806, which contained this language: "Provided, and this deed is upon condition, that no building shall ever be erected upon such premises nearer to Olive street than the house of H. G. Otis now stands."   In several subsequent deeds conveying the same premises the words "upon condition" were omitted, but the words "provided that," etc., were retained.   The deed to the complainant's testator, bearing date June 5, 1858, contained this recital: "The premises being subject to a condition that no building shall be erected nearer to Mount Vernon street than the house formerly of Harrison Gray Otis now stands."   Several defenses to the action have been urged; but the conclusion which has been reached makes it unnecessary to consider whether there are any grounds for denying specific performance of the contract other than that upon which the defendant placed his refusal to complete the purchase in his letter of April 23d.

The principles which control actions for specific performance are familiar, and, so far as they are applicable to the present controversy, can be briefly stated.   Equity will not decree specific performance of a contract to purchase real estate, when the decree would compel the defendant to accept a doubtful title.   The purchaser is entitled to a marketable title.   He is not justified in refusing to perform the contract because a fanciful or speculative doubt may be suggested of its validity.   But a title open to a reasonable doubt is not a marketable one; and unless the defect belongs to the category of those in which substantial justice can be done by allowing compensation to the purchaser, and decreeing per-

formance with allowances, the purchaser will not be subjected to the contingency of being disturbed, or having his title successfully challenged when he attempts to part with it. In such actions, unless the party is present in whom the outstanding right is vested, the court will not undertake to cure infirmities by deciding a disputed question of fact or a doubtful question of law, but will refuse to decide for or against the validity of the title. *Pyrke* v. *Waddingham*, 10 Hare, 1; *Bell* v. *Holtby*, L. R. 15 Eq. 178; *Swayne* v. *Lyon*, 67 Pa. St. 436; *Dobbs* v. *Norcross*, 24 N. J. Eq. 327; *Griffin* v. *Cunningham*, 19 Grat. 571; *Park Com'rs* v. *Armstrong*, 45 N. Y. 234.

The case of *Jeffries* v. *Jeffries*, 117 Mass. 184, is in point. That was a bill in equity to enforce specific performance by the defendant of an agreement for the purchase of a house and lot of land in Boston. The defense was that the title was incumbered by a condition which prevented the erection of any building exceeding a specified height upon the part of the land abutting on the street. The court used this language:

"It is urged by the plaintiff that the court should, at least, pass upon the question whether the proviso in the deed is a condition now in force which may defeat the title derived under it, because otherwise it can never be brought to a decision except at the risk of the forfeiture of the entire estate. But that is precisely what the court has not power to do so as to conclude those to whom the benefit of the condition, if it be one, has passed; and the effect of a decree overruling the defense would be simply to transfer from the plaintiff to the defendant whatever of risk or inconvenience there may be from such a cause. Hence the propriety and necessity of the rule in equity that a defendant in proceedings for specific performance shall not be compelled to accept a title in the least degree doubtful. It is not necessary that he should satisfy the court that the title is so defective that he ought to prevail at law; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title or rights incident to it."

The restrictive clause in the Mason-Bulfinch deed, and the succeeding conveyances referred to in the defendant's notice of rescision, applies to a strip of land adjoining Mount Vernon street which is 30 feet in width, and, whether treated as a strict condition, or only as a covenant running with the land, constitutes a defect in the title of the property which is not susceptible of pecuniary compensation. *Gilbert* v. *Peteler*, 38 N. Y. 165. If it is only a covenant, it affects part of the land purchased by the defendant with a servitude of a substantial nature, and the diminution in the value of the property purchased cannot be ascertained with any approximate accuracy. If the clause creates a condition, it constitutes a fatal defect in the title which the defendant is asked to accept. By the contract of purchase the defendant stipulated, in substance, to accept a title which would be subject to a servitude restricting the mode of use of the strip of land abutting on Mount Vernon street. Giving proper effect to the contract, he is entitled to have a clear title, free from all incumbrances except a servitude affecting only the strip in question; but he is not required to accept a title by which the whole estate becomes liable to forfeiture in case the part subjected to the restricted use is ever appropriated to a different use.

The clause in the Mason-Bulfinch deed, and especially the one in the Bulfinch-Humphreys deed, imposing the restriction against building, is in terms appropriate to create a condition, as distinguished from a limitation or covenant. Nothing could be plainer or more peremptory than the words in the latter deed,—"provided, and this deed is upon condition that." There is no room for construction, and there is nothing in the context of either of these deeds which warrants any other than the ordinary meaning of the language employed. Effect must be given to it conformably with the well-settled rules of law as expressing a technical condition. *Gray* v. *Blanchard*, 8 Pick. 283; *Langley* v. *Chapin*, 134 Mass. 82. The cases of *Ayling* v. *Kramer*, 133 Mass. 12; *Skinner* v. *Shepard*, 130 Mass. 180; and *Episcopal Mission* v. *Appleton*, 117 Mass. 326,—which illustrate the familiar rule that, although the words in a deed or devise are sufficient to create a condition the breach of which would forfeit the estate, the courts lean against such a construction, and when the words are capable of being treated as a covenant or restriction, will hold that they do not amount to a condition, do not conflict with the conclusion reached. The instrument considered by the court in each of these cases contained language from which it was reasonable to infer that the clause under consideration was not intended to operate as a condition.

The extrinsic evidence introduced by the complainant, for the purpose of showing that neither Mason nor Bulfinch intended that the restrictive clause in their deeds should take effect as a condition, if competent in any view as against the defendant, is not persuasive; much less is it controlling. So far as this evidence relates to the Mason-Bulfinch deed, it does not require comment, because the defendant must prevail if the clause in the Bulfinch-Humphreys deed is a condition; and it is therefore immaterial what construction is given to the clause in the Mason-Bulfinch deed. So far as it relates to the Bulfinch-Humphreys deed, it is to the effect that, shortly after Bulfinch purchased of Mason the property described in the Mason deed, which property included, not only the complainant's lot, but the lot adjoining it fronting on the same street, he conveyed the adjoining lot to Higginson by a deed without any condition or restriction against building. The deed to Humphreys and the deed to Higginson were apparently prepared at the same time, because they bear the same date; but the deed to Humphreys was not executed until a few days after the execution of the deed to Higginson. Conceding, for argument, that the evidence authorizes the inference that Bulfinch did not regard the restrictive clause in Mason's deed as a condition, the question is whether he intended to impose a condition in his own deed to Humphreys; and the fact that he saw fit to convey part of the land without condition or restriction has no legitimate bearing upon this question. It does not throw any light upon the meaning of his deed of another part of the land, made about the same time, to another person, in which he incorporated, not only a restriction, but an unequivocal condition. If such evidence can overthrow the plain language of a written instrument, the learning of the conveyancer is vain.

It must therefore be determined that the complainant is unable to con-

vey such title as the contract requires, and that specific performance should be denied. As the defendant insists by his answer upon a return of the money paid at the time of executing the contract, he is entitled to a decree to that effect, if the facts justify it, although he has not filed a cross-bill. Story, Eq. Pl. § 394; *Turner* v. *Marriott*, L. R. 3 Eq. 744; *Royou* v. *Paul*, 28 Law J. Ch. (N. S.) 555; *Turquand* v. *Rhodes*, 37 Law J. Ch. (N. S.) 830. It therefore becomes necessary to pass definitely upon the question of the validity of the title. Upon the view taken of the title and of the contract the defendant would be entitled to recover back his money in an action on the law side of the court. The decree must therefore direct repayment.